```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TRADIVERSE CORPORATION,              :       ORDER

                 Plaintiff,          :       20 Civ. 3387 (LTS)(GWG)

                                     :
         -against-
                                     :
LUZAR TRADING S.A.,
                                     :
                 Defendant.
-----------------------------------------------------------x
```

**Gabriel W. Gorenstein, United States Magistrate Judge**

      The parties to this case and the related case docketed as 20 Civ. 623 seek to have the Court either confirm or vacate two separate arbitration awards involving Tradiverse Corporation and Luzar Trading S.A. We will refer to the arbitrations by the dates the final awards were issued. The arbitration at issue in 20 Civ. 623 is the "December 2019" arbitration. The arbitration at issue in 20 Civ. 3387 is the "March 2020" arbitration (sometimes referred to as the "Sredna Gora" arbitration after the vessel involved).[1] Now before the Court is Tradiverse's application to obtain discovery on the issue of arbitrator bias relating to both arbitrations (Docket ## 13, 19, 21).

      Judge Dolinger ably laid out the principles applicable to discovery in cases seeking to confirm or vacate arbitrations in Frere v. Orthofix, Inc., 2000 WL 1789641, *4 (S.D.N.Y. Dec. 6, 2000). As Judge Dolinger pointed out, discovery in a post-arbitration proceeding is "available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." Id. (collecting cases); accord Transatlantic Lines, LLC v. Am. Steamship Owners Mutual Protection and Indemnity Assoc., 253 F. Supp. 3d 725, 734 (S.D.N.Y. 2017). Further, a court must carefully control any discovery because an "arbitration is intended to be a relatively prompt and inexpensive procedure." Frere, 2000 WL 1789641 at *4 (collecting cases). The promise of a prompt and inexpensive procedure would be vitiated if a court does not appropriately limit discovery. Additionally, "any inquiry that is targeted at the arbitrator is particularly suspect, since the arbitrator's coerced involvement in post-award litigation will inevitably intrude upon the arbitrator's quasi-judicial function and discourage qualified individuals from offering their services as arbitrators." Id. (collecting cases).

      Most of the discovery Tradiverse seeks does not have a direct relationship to either arbitration but rather to an entirely different proceeding. That proceeding involved what is called

---

[1] Unless otherwise noted, citations to docket entries in this Order refer to 20 Civ. 3387.

1

a "Clause 20" application made by Tradiverse to a trade association — the North American Export Grain Association ("NAEGA") — which, if approved, would have found Tradiverse's failure to fully perform the contract involved in the March 2020 arbitration to be justified. See Docket # 3 at 6-10. A committee appointed by NAEGA's president, Gary Martin, considered Tradiverse's Clause 20 application and rejected it. See id. Tradiverse views the NAEGA proceeding as tainted by improprieties, including, among other things, involvement by Martin and Luzar in the Clause 20 decision; payments by Luzar to Archer-Daniels-Midland ("ADM"), which was the employer of Michael Kaye, one of the three individuals appointed to serve on the NAEGA committee; and pre-existing hostility between ADM and Tradiverse. See id. at 2; see also Docket # 13; Docket # 21.

In its discovery application, Tradiverse seeks to depose Martin, Kaye, and one of the arbitrators, Andrew Marting,[2] and to obtain from them (1) information pertaining to payments from Luzar to ADM; (2) documents that NAEGA designated as privileged; (3) a joint defense agreement between NAEGA and Luzar; and (4) information pertaining to a seminar in Japan presented by NAEGA president Gary Martin along with Sam Bonilla and Marting, who were the individuals designated by Tradiverse to serve on the March 2020 and December 2019 arbitration panels, respectively. See Docket # 13.

While we find that the explanations in the record render many of Tradiverse's allegations innocuous, see, e.g., Docket # 4-1 at 14; Docket # 28 in 20 Civ. 623 at 6 n.3, the fundamental problem with these requests is that they largely relate to NAEGA and the "Clause 20" proceeding — not to the two arbitrations at issue here. Moreover, while NAEGA's rejection of the "Clause 20" application figured in the decision of the March 2020 arbitration panel, the decision in fact overturned NAEGA's rejection of Tradiverse's "Clause 20" application. That is, the March 2020 arbitration panel found that Tradiverse's "Clause 20" application should have been granted and issued its decision in accordance with that finding. See Docket # 4-1 at 16-19 (March 2020 final award). For these reasons, we conclude that the vast bulk of Tradiverse's discovery requests — relating to the behavior of the NAEGA panel, any alleged payment to the employer of a member of that panel, any joint defense agreement between NAEGA and Luzar, any involvement by Luzar and Martin in the NAEGA decision, and NAEGA's documents — are simply not relevant to this case. And even if we could find some marginal relevance, given our obligation to circumscribe discovery in the arbitration context to that which is necessary as well as our obligation to permit discovery only to the extent that it is "proportional" to the needs of the case, and to consider the importance of the discovery and its burdens, see Fed. R. Civ. P. 26(b)(1), we have no trouble concluding that Tradiverse is not entitled to discovery regarding the NAEGA proceeding.

Tradiverse's view is that it must be permitted to "connect the dots" and that if NAEGA or the NAEGA panel members were in fact biased, that bias must have infected the arbitrators in

---

[2] Although Tradiverse's papers consistently refer to "Andrew Martling" (Docket ## 13, 21), the December 2019 arbitration contains the signature of "Andrew Marting" (Docket # 4-2). We assume this is the correct rendition of his name.

2

the March 2020 proceeding.  See Docket # 21 at 2 (asserting that there are "clear and convincing dots which will be connected by limited further discovery.").

We begin by noting that part of Tradiverse's argument regarding what it characterizes as a "conspir[acy]" among a vast number of players, see Docket # 3 at 3, involves an attack on the reasoning of the arbitration panel, see id. at 19 ("both awards demonstrate bias, evident partiality and the exceeding of authority, with the March 2020 Award abjectly rife with inconsistencies and containing significant gyrations so as to arrive at a baseless, improper and unsupportable, seemingly pre-ordained, award in favor of Luzar").  Indeed, one of Tradiverse's letters in support of the discovery requests makes the remarkable argument that because the arbitration award was "unsupportable," it "could only have been arrived at by abandoning the arbitral dispute and backing into a pre-ordained result."  Docket # 21 at 2; accord id. at 3 ("Martin, Bonilla and Martling [sic] worked out a pre-ordained 'industrial justice' type decision which ignored the arbitral disputes and found in favor of Luzar in the face of mounds of contradictory evidence").  We reject the notion, however, that Tradiverse may obtain discovery of bias based on a claim that the arbitration awards were incorrectly decided.  Further, nothing in the awards themselves support the notion that the panels were biased.  If anything, the March 2020 award's rejection of the "Clause 20" finding reflects the opposite.  Moreover, if a party's disagreement with the reasoning of an arbitration award was a permissible launching pad for obtaining bias discovery, the losing party to any arbitration could make the case that it is entitled to discovery to determine whether the arbitrators were biased.

In the end, the efforts by Tradiverse to connect the various "dots" are fanciful.  And we reject Tradiverse's apparent argument that it must be given discovery to determine if there is evidence in existence that would allow it to prove the connection between seemingly unrelated or irrelevant "dots."  Fed. R. Civ. P. 26(b)(1) permits discovery based on a standard of "relevan[ce]" — not supposition or surmise.  A court cannot permit discovery in the unsupported hope that the information unearthed through discovery will connect otherwise unrelated or irrelevant "dots."[3]

---

[3] Notably, some of the evidence Tradiverse seeks here was brought into being by its own actions and thus cannot be viewed as part of a plot against it.  Tradiverse seeks a "joint defense agreement" that existed between Luzar and NAEGA.  See Docket # 13 at 3.  While it might seem odd that Luzar and NAEGA would have a joint defense agreement, Tradiverse never discloses in what context this agreement was reached.  It appears from the record, however, that Tradiverse sued Luzar and NAEGA in Florida state court in an effort to mount a challenge to the Clause 20 proceeding.  See Docket # 24-4.  Given this additional fact, it is unsurprising that there is a joint defense agreement between these entities.  It also follows that there would be privileged communications between Luzar and NAEGA that would appear on a privilege log, see Docket # 4-5, which is another set of documents sought by Tradiverse.  Of course, documents relating to Tradiverse's litigation against NAEGA and Luzar over the Clause 20 proceeding are irrelevant to any issues in the cases before this Court.

Tradiverse's application uses charged language in an effort to win its point — stating for example, that "the full scope of nefarious conduct engaged in by Luzar has not yet been unearthed." Docket # 3 at 19. In one of its filings, it specifies that the "nefarious conduct" occurred "by and between Luzar, NAEGA, Gary Martin, Michael Kaye and ADM [Kaye's company]." Docket # 20-1 in 20 Civ. 623 at 14. Putting aside the lack of reason to believe there was anything nefarious about their conduct, none of the persons listed and none of the employees of the entities listed served as arbitrators in either proceeding.[4] Rather, these are the players in the "Clause 20" proceeding, which we have already found is not a proper subject of discovery.

Of all Tradiverse's discovery requests, only two even remotely relate to any of the arbitrators in the two arbitrations. One is the request to obtain information about a seminar that took place in Japan presented by Martin, the NAEGA president, and Bonilla and Marting — individuals selected by Tradiverse to serve on the arbitration panels. The other is the request to depose Marting, a member of the December 2019 arbitration panel.

As to the seminar in Japan, Tradiverse's evidence about that trip specifically describes Marting and Bonilla as "senior advisors" to NAEGA, thus rendering the trip to Japan entirely explicable. See Docket # 4-6.[5] In any event, the seminar itself is a red herring since NAEGA was not a party to either of the arbitrations. Thus, there is no reason — other than fanciful speculation — why a seminar involving arbitrators and the head of NAEGA reflects improper influence by Luzar, the only other party to the arbitration. While the trip could theoretically have been part of the multi-party "conspir[acy]" (to use Tradiverse's word, see Docket # 3 at 3) to deprive Tradiverse of a fair arbitration before the March 2020 panel, that theory is grounded only in speculation and does not support a request for discovery.

As for the deposition of Marting, the evidence presented reflects nothing improper in his conduct. Moreover, it is a well-established rule that arbitrators may not be deposed absent "clear evidence of impropriety." Hoeft v. MVL Grp., Inc., 343 F.3d 57, 66 (2d Cir. 2003) (citations omitted); accord NGC Network Asia, LLC v. PAC P. Grp. Intern., Inc., 511 F. App'x. 86, 89 (2d Cir. 2013) (citation omitted). Here there is no such evidence, let alone "clear" evidence.

Confirmation of an arbitration award is supposed to be "a summary proceeding." Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984). While discovery in arbitration-confirmation proceedings is sometimes appropriate, none of the discovery sought by Tradiverse is necessary to the just and speedy determination of this case; nor does it meet the requirements of Fed. R. Civ. P. 26(b)(1).

---

[4] As described below, there is evidence that two of the arbitrators (the two that were selected by Tradiverse itself) are "senior advisors" to NAEGA along with other individuals in the industry, but there is no evidence that they are employees.

[5] NAEGA's website lists Marting and Bonilla as senior advisors to NAEGA along with other individuals. See NAEGA, Leadership and Staff, http://naega.org/the-association-2/child-page-4 (last visited June 23, 2020).

Conclusion

       The application for discovery (Docket # 13) is denied.

SO ORDERED.

Dated: June 23, 2020
       New York, New York

                                                 GABRIEL W. GORENSTEIN
                                                 United States Magistrate Judge